IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30550-3-III |
| | ) | consolidated with |
| Respondent, | ) | No. 30551-1-III |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL DUKE COOMBES, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — Michael Coombes appeals his convictions for first degree murder and tampering with a witness. He argues the trial court improperly joined three separate charges and erred in admitting evidence of his gun tattoo. He also contends that the trial court erred by instructing the jury it could convict him on alternate means of committing the crime of tampering with a witness when the State only charged him with one means. He also alleges ineffective assistance of counsel based on trial counsel's failure to object to the defective jury instructions. The State concedes that the trial court incorrectly instructed the jury.

We affirm the conviction for first degree murder and reverse and remand the tampering with a witness conviction.

FACTS

During the afternoon of September 3, 2007, a woman spotted a person lying in the bushes in Spokane's Beacon Hill neighborhood. A teenage boy volunteered to take a closer look and discovered that the person, a man, was deceased. When police arrived, they discovered the man had a gunshot wound behind his right ear. The man was later identified as William Nichols. An autopsy confirmed that his cause of death was a brain injury caused by the entry of a bullet into his skull.

Police identified Michael Coombes as a suspect. When police contacted Mr. Coombes, he spontaneously stated, "'You got me. It's no big deal. I'm going back where I belong, and I'll die in prison.'" Report of Proceedings (RP) (Dec. 14, 2011) at 447. A detective removed a revolver from Mr. Coombes's pocket. At a nearby residence, police found ammunition for the revolver in Mr. Coombes's backpack. During interviews with detectives, Mr. Coombes stated he was angry with Mr. Nichols for threatening his nephew and that he, therefore, shot him.

The State charged Mr. Coombes with first degree murder while armed with a firearm and first degree unlawful possession of a firearm. In 2008, he pleaded guilty to those charges. He later filed a personal restraint petition alleging his plea was invalid because he had not been informed at sentencing that he faced a mandatory minimum

2

sentence without eligibility for earned early release during the first 20 years. In an unpublished opinion, this court concluded that Mr. Coombes's guilty plea was not knowing and voluntary and remanded to the trial court to permit him to withdraw his plea. *In re Coombes*, 159 Wn. App. 1044, 2011 WL 240687. Mr. Coombes withdrew his plea, and the case was set for trial.

Before trial, the State moved to join and consolidate the intimidation and tampering with a witness charges with the first degree murder charge under CrR 4.3 and CrR 4.3.1(a). The State argued that the separate charges were of a "'similar character'" and, if tried separately, would include a significant amount of overlapping and cross admissible testimony and evidence. Clerk's Papers (CP) at 143. It specifically pointed out that the offenses were related because after being incarcerated on the murder charge, Mr. Coombes made a threatening call to a witness and conspired with an inmate in the county jail to "'either let me (Mr. Coombes) know where he is at, or shut him up before I go to trial.'" CP at 139.

Defense counsel argued that the offenses were dissimilar because one involved interference with the judicial process and the other with physically harming another. He also argued that there was a substantial danger of prejudice, arguing, "whenever you're adding an allegation that somebody is interfering with the judicial process, interfering

3

with the witness, I think the mere allegation is going to taint any trier of fact." RP

(Aug. 25, 2011) at 10. He also argued, "when you start piling on the charges, there's

always a concern that the jury's [going to] start cumulating evidence." RP (Nov. 3, 2011)

at 3.

The court granted the State's motion for joinder and consolidation, finding the

facts in the separate cases were of a similar character. It reasoned, "if these matters were

to be tried separately, there would be significant overlap and testimony that would clearly

be cross-admissible and likely admitted into evidence in both proceedings." CP at 137.

In its oral ruling, it explained that the different charges "play[ed] into the same set of

facts." RP (Nov. 3, 2011) at 6. The court also stated that it could not discern any

prejudice from joining the offenses.

At trial, the State moved for admission of a gun tattoo Mr. Coombes obtained after

the entry of his guilty plea in 2008, asserting it was relevant to demonstrate his connection

to the crime. The court admitted the photograph of the tattoo, reasoning that its relevance

outweighed the prejudice.

Several witnesses testified that Mr. Coombes admitted killing Mr. Nichols. Jamie

Hall testified that Mr. Coombes told her that he killed Mr. Nichols. Jason Pletcher

testified that he and Mr. Coombes acquired a .38 revolver and that the two of them

4

purchased ammunition for the gun. He also testified that Mr. Coombes told him that he had killed someone. Eric Nelson testified that he heard Mr. Coombes say, in reference to Mr. Nichols, "[h]e's done." RP (Dec. 13, 2011) at 244.

Tevan Williams, who was housed with Mr. Coombes in the same unit at the Spokane County jail, testified that Mr. Coombes told him that he killed someone and asked him to find Eric Nelson, a witness, and urge him not to testify. He testified that Mr. Coombes "asked me if I could contact some of my associates and make sure [Eric Nelson] didn't come to court." RP (Dec. 14, 2011) at 425. Mr. Williams also read a note that Mr. Coombes gave him in the jail, which stated in part that he hoped "'you can either let me know where [Eric Nelson] is at or shut him up before I go to trial.'" RP (Dec. 14, 2011) at 426.

Mr. Coombes did not testify. The jury found Mr. Coombes guilty of first degree murder while armed with a firearm and tampering with a witness. It acquitted him of the charge of intimidating a witness.

## ANALYSIS

*Joinder.* Mr. Coombes first contends that the trial court denied his right to a fair trial when it granted the State's motion to join for trial the charges arising from three separate incidents. He asserts that the joinder unfairly prejudiced him at trial and that the

court erred in failing to consider the mandatory *Watkins* factors in evaluating prejudice. *State v. Watkins*, 53 Wn. App. 264, 766 P.2d 484 (1989).

The question of whether offenses are properly joined is a question of law we review de novo. *State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). Joinder allows the State to combine two or more offenses in one charging document when the offenses: "(1) [a]re of the same or similar character, even if not part of a single scheme or plan; or (2) [a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a). We construe the rule expansively to promote the public policy of conserving judicial and prosecutorial resources. *State v. Hentz*, 32 Wn. App. 186, 189, 647 P.2d 39 (1982), *rev'd in part on other grounds*, 99 Wn.2d 538, 663 P.2d 476 (1983).

Once a trial court properly joins offenses, the charges remain joined for trial unless the trial court severs them. CrR 4.3.1(a); *State v. Williams*, 156 Wn. App. 482, 501, 234 P.3d 1174 (2010). CrR 4.4(a)(1) requires a defendant to make a pretrial motion to sever and, if overruled, to renew the motion "before or at the close of all the evidence." If a party does not bring a motion to sever charged offenses during trial, it waives the right to later challenge that issue on appeal. *State v. Henderson*, 48 Wn. App. 543, 551, 740 P.2d 329 (1987); CrR 4.4.

Here, Mr. Coombes did not move to sever the offenses, so the issue is waived on appeal. *Bryant*, 89 Wn. App. at 864. Nonetheless, as pointed out by the *Bryant* court, because joinder and severance "are based on the same underlying principle, that the defendant receive a fair trial untainted by undue prejudice[,] the 'pure' legal issue of joinder" cannot be decided without considering prejudice. *Id.* at 865. Thus, even if joinder is permissible, "the trial court should not join offenses if prosecution of all charges in a single trial would prejudice the defendant." *Id.*

To lessen the chance of prejudice, courts consider four factors: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

Mr. Coombes contends the first factor weighs in his favor because the evidence supporting the charges was weak as evidenced by the jury's returning of a not guilty verdict on the charge of intimidating a witness. However, Mr. Coombes's posttrial reliance upon the jury's verdict is hindsight; at the time the trial court weighed the evidence for purposes of resolving the motion, the anticipated evidence was strong enough to support the decision to join the charges. Mr. Coombes fails to demonstrate

how his case was unduly prejudiced by a decision to join a weak charge with a stronger one.

As for the second factor, the likelihood that a jury will be confused by a defendant's defenses is slight when the defenses are identical. *Russell*, 125 Wn.2d at 64. Mr. Coombes's defense on each count was denial. Mr. Coombes does not explain how joining the counts would confuse the jury as to his defenses or how those defenses are inconsistent with each other.

The next factor is whether the trial court properly instructed the jury to consider each count separately. Here, the court properly instructed the jury: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 122. However, Mr. Coombes contends that this instruction was inadequate because "[i]t did not direct the jury to segregate the evidence to determine whether it supported each count individually." Br. of Appellant at 23.

His argument is without merit. The evidence of each count was sufficiently distinct that the jury could follow this instruction, and we presume the jury did so. *State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994). When the trial court has instructed the jury to consider each count separately and the jury then convicts on some, but not all

8

counts, it is clear that the jury followed the instruction; and the defendant can demonstrate no prejudice from failure to sever the counts. *State v. Wilson*, 71 Wn. App. 880, 887, 863 P.2d 116 (1993), *rev'd in part on other grounds*, 125 Wn.2d 212, 883 P.2d 320 (1994). Here, the jury acquitted Mr. Coombes of the intimidation of a witness charge. Under *Wilson*, this is sufficient to show that the jury followed the instructions.

The final factor in determining whether the potential for prejudice requires severance is the admissibility of the evidence in one charge in a separate trial of the other charge. Here, the trial court found that if the matters had been tried separately, there would be "significant overlap and testimony that would clearly be cross-admissible." CP at 137. Mr. Coombes asserts that the trial court was required to conduct an ER 404(b) analysis on the record in evaluating this factor. However, he cites no authority for this proposition. Moreover, even if the court erred in this finding, "[t]he fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law." *State v. Kalakosky*, 121 Wn.2d 525, 538, 852 P.2d 1064 (1993). "'When evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime.'" *State v. Bythrow*, 114 Wn.2d 713, 721, 790 P.2d 154

9

(1990) (quoting *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987)). Here, the trial court could reasonably conclude that the jury would be able to compartmentalize the various counts. In this case, it was not a particularly difficult task to keep the testimony and evidence of each count separate.

Given that the crimes were not particularly difficult to compartmentalize and that the court instructed the jury to consider the crimes separately, the court did not err in concluding that the potential prejudice did not outweigh the concern for judicial economy.

The trial court did not err in joining the three separate charges.

*Photograph of Gun Tattoo.* Mr. Coombes contends that the court erred in admitting evidence of his gun tattoo because it is irrelevant and prejudicial under ER 402 and ER 404(b). He also asserts that because the tattoo memorialized his guilty plea, it should have been excluded under ER 410, which bars the admission of evidence relating to a previous guilty plea.

The trial court has discretion to admit or exclude relevant evidence. *State v. Swan*, 114 Wn.2d 613, 658, 790 P.2d 610 (1990). We reverse only for an abuse of that discretion. *State v. Cheatam*, 150 Wn.2d 626, 645, 81 P.3d 830 (2003). Abuse requires a showing that the trial judge's decision is based on untenable grounds or untenable reasons. *State v. Hudson*, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009).

To be admissible, evidence must be relevant. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." ER 401. Even if evidence is relevant, however, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

Citing ER 404(b), the court found the tattoo relevant and noted that Mr. Coombes could offer a benign reason for having the tattoo. The State argues that the tattoo is relevant because it establishes Mr. Coombes's knowledge of intimate details of the murder that could only be known by a participant and, therefore, corroborates Mr. Coombes's identity.

Mr. Coombes addresses the tattoos under ER 404(b), which applies to "[e]vidence of other crimes, wrongs, or acts," and ER 410(a), which applies to evidence of withdrawn guilty pleas. However, the State introduced the evidence, not as an "act" or related to a guilty plea, but as corroborative evidence that Mr. Coombes was involved in the murder. ER 410 does not apply because the gun tattoo was not offered as evidence of a previous guilty plea. The applicable evidentiary rule is ER 403, which provides for the exclusion of evidence if its probative value is outweighed by the danger of prejudice.

The tattoo was relevant because it depicted the identical type of gun that was used

11

in the murder. As such, it corroborated Mr. Coombes's identity as the shooter. Also, as the trial court pointed out, Mr. Coombes was not precluded from offering a benign reason for the tattoo. *State v. Nelson*, 152 Wn. App. 755, 772, 219 P.3d 100 (2009).

There was a tenable basis for admitting the tattoo evidence. The trial court did not abuse its discretion in admitting the tattoo evidence.

*Alternative Means Instruction.* Finally, Mr. Coombes contends that the trial court erred by instructing the jury on uncharged alternatives to the crime of tampering with a witness. Whether a jury instruction accurately states the law without misleading the jury is reviewed de novo. *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003). Mr. Coombes did not object to the instruction at trial. But because this issue involves the omission of elements of the charged crime, it is a "'manifest error affecting a constitutional right,'" and this court may consider the issue for the first time on appeal. *Chino*, 117 Wn. App. at 538 (quoting RAP 2.5(a)(3)).

"It is fundamental that under our state constitution an accused person must be informed of the criminal charge he or she is to meet at trial, and cannot be tried for an offense not charged." *State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988). When an information alleges only one crime, it is constitutional error to instruct the jury on a different, uncharged crime. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988).

Such an error is presumed prejudicial unless it affirmatively appears that the error was harmless. *Id.* at 34-35.

There are two alternative means of tampering with a witness. RCW 9A.72.120(1) provides that "[a] person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe . . . may have information relevant to a criminal investigation . . . to: (a) [t]estify falsely or . . . withhold any testimony; or (b) [a]bsent himself or herself from such proceedings."

However, the State charged Mr. Coombes with just one means of tampering with a witness. The information provided:

> That the defendant, MICHAEL DUKE COOMBES, in the State of Washington, on or about August 25, 2011, did attempt to induce ERIC L. NELSON, a witness in an official proceeding to absent himself/herself from such proceedings.

CP at 5. When it instructed the jury on tampering with a witness, the court gave an instruction that included both alternative means of tampering:

> To convict the defendant of the crime of tampering with a witness, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 25th day of August, 2011, the defendant attempted to induce a person to testify falsely or withhold any testimony or absent himself or herself from any official proceeding.

CP at 119.

13

And instruction 13 stated:

A person commits the crime of tampering with a witness when he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding to testify falsely, or to withhold any testimony, or to absent himself or herself from any official proceedings.

CP at 118.

The trial court erred in providing the jury with instructions that contained alternative means of committing the crime when only one means was specified in the information. The manner of committing an offense is an element, and the defendant must be informed of this element in the information. *Bray*, 52 Wn. App. at 34. Where the instructional error favors the prevailing party, it "is presumed [to be] prejudicial unless it affirmatively appears . . . the error was harmless." *Id.* at 34-35. Here, the State presented evidence of both alternative means of tampering with a witness. Mr. Williams testified that Mr. Coombes told him he had a witness "that need[] not to come to court." RP (Dec. 14, 2011) at 424. However, Mr. Williams also testified that Mr. Coombes asked him to get Mr. Nelson to "'shut . . . up'" and "'say he made it up.'" RP (Dec. 14, 2011) at 426. In view of this testimony, we cannot say the jury did not convict Mr. Coombes on the basis of the uncharged alternative. The error was not harmless.

Given our resolution of the issue, we need not address whether counsel was

14

ineffective for failing to object to the instruction.

It was reversible error to instruct the jury on an uncharged alternative to tampering with a witness when the jury could have convicted Mr. Coombes on the basis of the uncharged alternatives.

*Statement of Additional Grounds for Review.* In his statement of additional grounds for review, Mr. Coombes alleges defense counsel was ineffective during opening statement by promising testimony regarding the lack of fingerprint evidence. Citing *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), he contends counsel renders ineffective assistance of counsel as a matter of law when evidence promised in an opening statement is not delivered at trial.

To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Trial conduct that can be characterized as legitimate trial strategy or tactic cannot serve as a basis for a claim of ineffective assistance of counsel. *State v. Mak*, 105 Wn.2d 692, 731, 718 P.2d 407 (1986), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994).

In *Anderson*, the defendant's trial counsel promised in opening statements that he would produce the testimony of a psychologist and a psychiatrist to support the assertion

15

that the defendant's mental state rendered him guilty of a lesser offense. Trial counsel went forward with this defense, but did not produce the promised testimony. The court stated, "little is more damaging than to fail to produce important evidence that had been promised in an opening." *Anderson*, 858 F.2d at 17. The court held it is "prejudicial as [a] matter of law" to promise and not produce "such powerful evidence." *Id.* at 19.

This case is easily distinguishable from *Anderson*. Whereas, the *Anderson* court characterized the promised testimony as "dramatic" and "strikingly significant,"[1] the promised testimony here was of relative unimportance to Mr. Coombes's defense. Defense counsel here stated in opening statement: "No one will say that they saw [Mr. Coombes] at the scene, and, in fact, you'll hear that there's no prints come back to Mr. Nichols on the particular automobile that was used in this particular case." RP (Dec. 13, 2011) at 221. Defense counsel did not produce this testimony during trial. The promised testimony regarding the absence of Mr. Nichols's fingerprints was of relative insignificance to Mr. Coombes's defense.

However, even if we were to conclude that trial counsel's performance was somehow deficient, Mr. Coombes cannot point to any prejudice that, within a reasonable probability, affected the outcome of the case. *Strickland v. Washington*, 466 U.S. 668,

---

[1] *Anderson*, 858 F.2d at 17.

16

No. 30550-3-III; No. 30551-1-III
*State v. Coombes*

687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We look to the circumstances of each case to determine whether a broken opening statement promise to present particular testimony is ineffective assistance of counsel. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 898-99, 952 P.2d 116 (1998). Here, unlike *Anderson*, trial counsel did not make the promised testimony the centerpiece of the defense's case in opening statements; thus, there is no ineffective assistance of counsel.

We affirm the first degree murder conviction. We reverse and remand the tampering with a witness conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, A.C.J.

17