FILED
COURT OF APPEALS
DIVISION II

2013 JUL -9 AM 9:09

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41939-4-II |
| Respondent, | |
| v. | |
| JOSHUA ANTHONY WARREN, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Joshua Anthony Warren appeals his felony conviction for second degree child rape. Warren argues that (1) the prosecutor committed misconduct by analogizing the beyond a reasonable doubt standard to a jigsaw puzzle, (2) the trial court wrongfully excluded evidence of SL's virginity under the rape shield statute[1] and thus violated his constitutional rights to present a defense and confront his accuser, (3) the trial court wrongfully excluded the victim's incriminating voicemails as hearsay, and (4) the trial court imposed community custody conditions without statutory authority and imposed conditions that are unconstitutionally vague.

The prosecutor did not commit misconduct while explaining the beyond a reasonable doubt standard because he did not equate the State's burden of proof to making an everyday choice or quantify the level of certainty necessary to satisfy the beyond a reasonable doubt standard. Additionally, the trial court did not err by excluding evidence of SL's virginity under the rape shield statute because Warren failed to show that this evidence was relevant. Warren does not adequately explain his argument regarding the victim's voicemails, and we will not consider it. Finally, the trial court erred by imposing sentencing conditions that restricted Warren's internet access, required him to complete an anger management program, required him

---

[1] RCW 9A.44.020

to undergo a mental health evaluation, and restricted him from patronizing establishments that promote the commercialization of sex because these restrictions were not crime related. The trial court acted without statutory authority by limiting Warren's access to mind-altering, mood-altering, and controlled substances to only those obtained from some licensed providers. We affirm Warren's conviction and remand for resentencing.

## FACTS

### I. FACTUAL BACKGROUND

On August 21, 2009, SL was 13 years old and living with Stephanie Lower, her mother, in an apartment in Tillicum. In the past, Warren—the 19-year-old friend of SL's brother—had also lived with SL and Lower in the apartment. On the night of August 21, 2009, SL attended a family party that Warren also attended. Late in the evening, SL returned to her apartment. SL had seen Warren drinking, so she phoned to see if he was okay. During the conversation, she asked Warren to come over to the apartment. When Warren arrived, he picked SL up off the couch and moved her to another couch covered by a blanket where he vaginally penetrated her with his fingers and penis. SL told Warren that it hurt but he continued, so SL pushed Warren off of her and went into the bathroom. Warren left the apartment. SL told Lower what happened, and Lower called the police.

The police arrived, interviewed SL and Lower, and gathered the blanket from the couch for testing. Lower and SL were transported to the hospital where a sexual assault kit was completed. A forensic analyst later examined the swabs from the sexual assault kit and the blanket and determined that the blanket tested positive for Warren's semen and skin cells, but the sexual assault kit tested negative for semen. Warren agreed to speak with police, and, during the

interview, he denied raping SL. After further investigation, the State charged Warren with second degree child rape under RCW 9A.44.076.

I.   PROCEDURAL BACKGROUND

Warren's claims arise from (1) the pretrial proceeding where the trial court barred evidence of SL's virginity under the rape shield statute, (2) the trial where the judge sustained an objection to hearsay evidence regarding the victim's alleged voicemails, (3) closing arguments where the prosecutor used a jigsaw puzzle analogy to explain the beyond a reasonable doubt standard, and (4) the sentencing hearing where the judge placed sentencing conditions on Warren's community custody.

During pretrial proceedings, the prosecutor asked the court to enforce the rape shield statute, RCW 9A.44.020, during any direct or cross-examination of witnesses with knowledge of SL's prior sexual history. The defense counsel posited that, because she was a virgin, SL would have bled if Warren had raped her and, thus, the lack of blood evidence from the blanket or from the sexual assault kit contradicted the rape charge. The court determined that evidence of SL's virginity was barred by RCW 9A.44.020 because it referenced the victim's prior sexual history, but the court allowed the defense to point out the lack of blood evidence.

During trial, the defense attempted to elicit testimony from SL that she called Warren's brother to tell him that she had lied about Warren raping her, but SL testified that she did not call Warren's brother after the incident. The defense counsel asked SL if she had left Warren's brother a voicemail, and again she reaffirmed that she did not call him. The defense counsel then asked SL if she had left Warren's brother a voicemail saying that she lied, which the prosecutor objected to as hearsay and because the question was asked and answered. The court sustained the objection.

3

During closing arguments, the prosecutor explained the beyond a reasonable doubt standard to the jury using a jigsaw puzzle analogy. The prosecutor analogized the trial to a puzzle of Seattle, explained that throughout the trial the witnesses provided different pieces of the puzzle, and said:

> Is there still a doubt? Yes. Is there still a doubt that this is a picture of the city of Seattle? I suppose there is. A big piece of the puzzle is missing, but you can look at the evidence you do have. You have the Space Needle. You have Mount Rainier. You have a fraction of the Key Arena and the Seattle Center. And the question I'll pose to you is this: You may not have every piece of the puzzle, but based on the pieces that you have, can you find beyond a reasonable doubt that this is a picture of the city of Seattle? Would you be reasonable in reaching that conclusion?

2 Report of Proceedings (RP) at 393. The court instructed the jury that:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers (CP) at 65. The defendant did not object to the use of this analogy at trial and did not request a curative instruction from the court.

The jury found Warren guilty of one felony count of second degree rape of a child. On March 25, 2011, the court sentenced Warren to a minimum-term indeterminate sentence with a minimum term of 111 months and a maximum term of life in prison. During the sentencing hearing, the trial court imposed 27 community custody conditions. Warren appeals.

## ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Warren first argues that the prosecutor committed constitutionally offensive, flagrant, prejudicial, and ill-intentioned misconduct by explaining the beyond a reasonable doubt standard

using a puzzle analogy during his closing argument. Because the prosecutor did not equate the State's burden of proof to making an everyday choice or quantify the level of certainty necessary to satisfy the beyond a reasonable doubt standard, Warren's argument fails.

A defendant who alleges prosecutorial misconduct bears the burden of proving that, in the context of the record and circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). A defendant can establish prejudice by showing a substantial likelihood that the misconduct affected the jury verdict. *Glasmann*, 175 Wn.2d at 704. Where the defendant fails to object to the prosecutor's improper statements at trial, such failure constitutes a waiver of claims of prosecutorial misconduct unless the prosecutor's statement is "'so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

A prosecutor's use of a jigsaw puzzle analogy to explain the beyond a reasonable doubt standard is reviewed on a case–by–case basis. *State v. Fuller*, 169 Wn. App. 797, 825, 282 P.3d 126 (2012), *review denied*, 176 Wn.2d 1006 (2013)). We have held that the State's use of a puzzle analogy constitutes prosecutorial misconduct where the State either equates its burden of proof to making an everyday choice or quantifies the level of certainty necessary to satisfy the beyond a reasonable doubt standard. *Fuller*, 169 Wn. App. at 827; *see also State v. Anderson*, 153 Wn. App. 417, 220 P.3d 1273 (2009); *State v. Johnson*, 158 Wn. App. 677, 243 P.3d 936 (2010)). But, where the State does not minimize its burden of proof or shift the burden of proof to the defendant by use of a puzzle analogy, such use does not rise to the level of misconduct.

*Fuller*, 169 Wn. App. at 826 (citing *State v. Curtiss*, 161 Wn. App. 673, 700-01, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011)).

Here, Warren did not object to the State's use of a puzzle analogy to explain the beyond a reasonable doubt standard during its closing argument, so Warren carries the burden of showing that the prosecutor's statement is so improper and prejudicial that it could not have been neutralized by a curative instruction to the jury. During closing argument, the prosecutor analogized pieces of evidence with pieces of a puzzle picturing Seattle and explained the reasonable doubt standard by saying, "You may not have every piece of the puzzle, but based on the pieces that you have, can you find beyond a reasonable doubt that this is a picture of the city of Seattle?" 2 RP at 393. The State neither equated its burden of proof to making an everyday choice nor quantified the level of certainty necessary to satisfy the beyond a reasonable doubt standard. The State's burden was not minimized by the prosecutor's statements, and the burden of proof was not shifted to the defendant. Furthermore, the court instructed the jury that:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions."

CP at 65. Warren failed to show that the prosecutor's use of a puzzle analogy was misconduct.

II.     RAPE SHIELD STATUTE

Next, Warren argues that the trial court erred and violated his constitutional rights to present a defense and confront his accuser by excluding evidence of SL's virginity under the rape shield statute.[2] Because the proffered evidence had no relevance, we need not address these claims.[3]

We review a trial court's decision to exclude evidence to determine if its decision was manifestly unreasonable or based upon untenable grounds. *State v. Posey*, 161 Wn.2d 638, 648, 167 P.3d 560 (2007); *State v. Perrett*, 86 Wn. App. 312, 319, 936 P.2d 426 (1997) (quoting *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994)). The appellant bears the burden of proving that the trial court erred. *State v. Hentz*, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), *rev'd on other grounds*, 99 Wn.2d 538 (1983).

Here, the trial court did not err by refusing to allow Warren to elicit evidence of SL's virginity because he failed to show that her virginity was relevant. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401. If

---

[2] RCW 9A.44.020(2), the rape shield statute, states:

> Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent . . . .

[3] Warren further argues that the trial court violated his due process rights and his right to confrontation by restricting defense counsel's ability to ask the victim if she left a message on Warren's brother's phone saying that she lied about the rape. We do not review assigned errors where arguments for them are not adequately developed in the briefs. *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010). Warren does not adequately develop this argument, devoting less than three sentences of his brief to it and failing to explain why the inadmissibility of hearsay evidence is governed by the rape shield statute. Therefore, we do not consider his argument.

7

evidence is relevant, the burden shifts to the State to show that the evidence is so prejudicial as to disrupt the fairness of the fact-finding process. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). The trial court properly determined that SL's virginity has no relevance to any material fact in this case because the defense failed to offer any evidence of the incidence of bleeding from initial intercourse.

III. CONDITIONS ON COMMUNITY CUSTODY

Warren argues that (1) the trial court erred by imposing sentencing conditions 13, 24, 25, 26, and 27 and (2) that condition 24 and the prohibition from patronizing establishments that promote the commercialization of sex under condition 27 are unconstitutionally vague. Because the trial court erred by restricting Warren's internet access, by requiring him to complete an anger management treatment program, by requiring that he undergo a mental health evaluation, and by restricting Warren from patronizing establishments that promote the commercialization of sex and because the trial court acted without statutory authority by limiting Warren's access to mind-altering, mood-altering, and controlled substances to only those obtained from a licensed physician, we remand for resentencing.

A defendant may argue for the first time on appeal that sentencing conditions placed on his community custody were imposed without authority under existing statutes. *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003) (citing *State v. Julian*, 102 Wn. App. 296, 304, 9 P.3d 851 (2000)). We review the imposition of sentencing conditions under existing statutes to determine if the trial court exercised its discretion in a manifestly unreasonable way, or on untenable grounds, or for untenable reasons. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). When a trial court imposes an unauthorized condition on community custody, we

8

remedy the error by remanding the issue with instructions to strike the unauthorized condition. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

A sentencing court has broad discretion to impose reasonably crime-related conditions on community custody under RCW 9.94A.703; *O'Cain*, 144 Wn. App. at 775. A sentencing condition is a crime-related prohibition if it "directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct." RCW 9.94A.030(10). While sentencing conditions "must be directly related to the crime" for which the defendant was convicted, they "need not be causally related to the crime." *State v. Autrey*, 136 Wn. App. 460, 467, 150 P.3d 580 (2006) (quoting *State v. Letourneau*, 100 Wn. App. 424, 432, 997 P.2d 436 (2000)). We have recognized an exception to the crime-related limitation when a trial court requires the offender to engage in law abiding behavior. *Jones*, 118 Wn. App. at 205-06.

We only consider claims that are ripe. *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008). A claim is ripe and, therefore, fit for judicial determination if (1) the issues raised are primarily legal, (2) the issues do not require further factual development, and (3) the challenged action is final. *Bahl*, 164 Wn.2d at 751 (quoting *First United Methodist Church v. Hearing Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). We also consider the "'hardship to the parties of withholding court consideration.'" *Bahl*, 164 Wn.2d at 751 (quoting *First United Methodist Church*, 129 Wn.2d at 255)).

First, Warren challenges the trial court's imposition of sentencing condition 13 because its alcohol restriction is not a crime-related prohibition. Condition 13 provides, "You shall not possess or consume any mind or mood altering substances, to include alcohol, or any controlled

substances without a valid prescription from a licensed physician." CP at 102. Warren's argument is not persuasive because there was evidence at trial that Warren was under the influence of alcohol when his crime occurred, making his alcohol consumption a circumstance of the crime and, therefore, crime related under RCW 9.94A.703(3)(f). Because alcohol was related to Warren's crime, the trial court did not err by restricting Warren's access to alcohol.

Warren also argues that the trial court erred by imposing condition 24 because it is not crime related. Condition 24 states, "You shall not have access to the internet unless the computer has child blocks in place and active, unless otherwise approved by the Court." CP at 103. The State concedes that the trial court erred by imposing condition 24 because there was no testimony to suggest that the internet was related to Warren's crime. The State correctly points out that there is no evidence in the record to suggest that the internet restriction was crime related, and we hold that the trial court erred by imposing condition 24.

Next, Warren argues that the trial court erred by requiring him to participate in the Department of Corrections' (DOC's) Moral Reconation Therapy (MRT) subject to the community custody officer's (CCO) discretion under sentencing condition 25. We agree with the State that this issue is not ripe. Condition 25 provides that Warren must "[p]articipate in DOC's Moral [Reconation] Therapy (MRT) per CCO's discretion." CP at 103. Because the CCO has discretion to require Warren to participate in MRT and because the CCO has not yet exercised this discretion, this action is not final, and, therefore, it is not ripe for us to review.

Warren argues that the trial court erred by requiring him to successfully complete an anger management treatment program under sentencing condition 25. Because there was no evidence that anger was a factor in his crime, this condition is not crime related, and the trial court erred by requiring Warren to complete an anger management program.

10

Next, Warren argues that the trial court erred by requiring him to obtain both a substance abuse evaluation and a mental health evaluation under condition 26 because they are not crime-related prohibitions. The State concedes that the trial court erred by requiring a mental health evaluation, and we agree because there was no evidence at trial to suggest that Warren's crime was related to a mental state necessitating a mental health evaluation. In contrast, there is evidence that Warren was using alcohol immediately prior to committing his crime, which provides the required connection between Warren's crime and his alcohol consumption.

Warren further argues that the trial court erred by imposing condition 27 on his community custody sentence. Condition 27 provides, "Do not patronize Prostitutes or establishments that promote the commercialization of sex." CP at 103. The State concedes that the trial court erred by prohibiting Warren from patronizing establishments that promote the commercialization of sex. We agree because there is no evidence to suggest that such establishments were in any way related to Warren's crime. As to the provision prohibiting him from patronizing prostitutes, in Washington it is a misdemeanor to patronize a prostitute. RCW 9A.88.110. Because trial courts are allowed to impose conditions requiring offenders to engage in law-abiding behavior, and requiring Warren not to patronize prostitutes is a requirement to engage in law-abiding behavior, the trial court did not err by imposing this condition.

Finally, Warren challenges the trial court's statutory authority to impose condition 13, which requires that he obtain mind-altering, mood-altering, and/or controlled substances only from a licensed physician. Where the defendant challenges whether the trial court has any statutory authority to impose a particular condition, the proper standard of review is de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Under RCW 9.94A.703(2)(c), trial courts may order that offenders "[r]efrain from possessing or consuming controlled

11

substances except pursuant to lawfully issued prescriptions." Warren argues that the trial court did not have statutory authority to limit his access to controlled substances beyond those lawfully issued, which would include prescriptions obtained from other lawful sources such as dentists or optometrists.[4] There is no evidence in the record to support a connection between this limitation and Warren's crime. However, the trial court did have authority under RCW 9.94A.703(2)(c) to prohibit Warren from possessing or consuming controlled substances beyond those lawfully issued. Therefore, we remand to the trial court to replace "valid prescription from a licensed physician" with "lawfully issued prescriptions." *See* CP at 102.

In summary, the trial court erred by imposing condition 13 because it lacked statutory authority to limit Warren's access to mind-altering, mood-altering, or prescription drugs to only those obtained from licensed physicians, rather than all lawfully issued prescriptions; condition 24 because the internet restrictions are not crime related; condition 25 in part because the anger management program requirement is not crime related; condition 26 in part because the mental health evaluation requirement is not crime related; and condition 27 in part because the restriction from patronizing establishments that promote the commercialization of sex is not crime related.

---

[4] The State argues that this issue is not ripe for review, but this issue is ripe because it is legal in nature, does not require further factual development, and the sentencing condition is final. Review of this issue is also not difficult for this court to entertain, is in the interest of judicial efficiency, and prevents hardship on the defendant. *See Bahl*, 164 Wn.2d at 751. Because this issue is ripe for review, the question is whether the limitation on access to mind-altering, mood-altering, or controlled substances is reasonably related to Warren's crime.

41939-4-II

We affirm Warren's conviction and remand for resentencing..

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Bjorgen, J.

Worswick, C.J.

13