[Nos. 38373-6-I, 39221-2-I. Division One. February 9, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. VINCENT LEE BRYANT, *Appellant*.
*In the Matter of the Personal Restraint of* VINCENT LEE BRYANT, *Petitioner.*

---

*Stella S. Buder* of *Washington Appellate Project*, for appellant.

*Vincent L. Bryant*, pro se.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *David F. Thiele, Deputies*, for respondent.

KENNEDY, A.C.J. — Vincent Lee Bryant appeals his conviction of bail jumping, contending, inter alia, that (1) the trial court improperly joined the charge of bail jumping with the underlying charge of robbery in the second degree for purposes of trial; (2) the conviction is not supported by substantial evidence that Bryant knowingly failed to appear for his omnibus hearing; (3) the trial court violated his due process rights by giving the standard knowledge instruction because the State relied on the inference contained in the knowledge instruction as its sole proof that he knowingly failed to appear for his omnibus hearing for the robbery charge and because the inferred fact of knowledge does not flow from the foundational fact of notice beyond a reasonable doubt; and (4) that prosecutorial misconduct requires a new trial.[1]

We conclude as a matter of law that when a defendant's custody and release on bail or bond stems directly from an underlying substantive charge, a charge of bail jumping is properly joined for trial with the underlying charge, absent a strong showing of prejudice to the accused. Here, Bryant was free on bail pending trial of the charge of robbery in the second degree when he failed to appear for the omnibus hearing on the robbery charge. Bryant made no showing of prejudice to the trial court and fails to show prejudice on appeal.

We also find sufficient evidence in the record to support the conviction and conclude that the trial court did not err in giving the knowledge instruction. Bryant waived the alleged prosecutorial misconduct by failing to object at trial. In any event, any misstatement of the law contained in the

---

[1]Bryant's remaining contentions raised in the direct appeal and by way of personal restraint petition are treated in the unpublished portion of this opinion.

prosecutor's closing argument was neither flagrant nor ill-intentioned and did not prejudice Bryant. Accordingly, we affirm the conviction of bail jumping.

## FACTS

Bryant was charged with robbery in the second degree by information. The evidentiary facts giving rise to this charge are not relevant to the disposition of the appeal. On December 2, 1994, the trial court ordered Bryant to post either $10,000 cash bail or a $20,000 bond, and to appear for an omnibus hearing on December 8, 1994. Bryant posted a $20,000 bond but failed to appear at the omnibus hearing. The omnibus judge forfeited the bond and issued a bench warrant. Four days later, Bryant voluntarily appeared before the omnibus court in the company of his attorney, claiming that he had become confused about his court dates with respect to the robbery charge and a different charge pending in another county. The judge reinstated his bond, warning him, "This is your last break." Report of Proceedings (omnibus) at 4, 10.

By amended information, the State charged Bryant with bail jumping in addition to robbery in the second degree. Over Bryant's objection, the trial court joined the two offenses for trial. On January 26, 1995, following a three-day trial, a jury convicted Bryant of bail jumping and, instead of robbery in the second degree, theft in the third degree. On February 2, 1996, the court sentenced Bryant within the standard range.[2] Bryant brings this timely appeal of the bail jumping conviction. He does not appeal his conviction of third degree theft.

## DISCUSSION

### I. Joinder

■■ ■ CrR 4.3(a) explains when joinder of offenses is proper:

---

[2]Bryant's sentencing did not take place until February 2, 1996, because he failed to appear for sentencing on February 13, 1995, and fled the jurisdiction for over a year. Charges for the 1995 bail jumping were pending at the time of sentencing in the instant matter.

> Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both . . . [a]re based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

CrR 4.3(a)(2).[3] This rule should be construed expansively to promote the public policy of conserving judicial and prosecution resources. *State v. Hentz*, 32 Wn. App. 186, 189, 647 P.2d 39 (1982), *rev'd in part on other grounds*, 99 Wn.2d 538, 663 P.2d 476 (1983). The question of whether two offenses are properly joined is a question of law subject to full appellate review. *Hentz*, 32 Wn. App. at 189. Questions of law are reviewed de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111, 112 S. Ct. 1215, 117 L. Ed. 2d 453 (1992).

 If joinder was not proper but offenses were consolidated in one trial, the convictions must be reversed unless the error is harmless. *State v. Wilson*, 71 Wn. App. 880, 885, 863 P.2d 116 (1993), *rev'd in part on other grounds*, 125 Wn.2d 212, 883 P.2d 320 (1994). Where joinder is proper, the offenses shall be consolidated for trial; but the trial court may sever the offenses if doing so will promote a fair determination of the defendant's guilt or innocence of each offense, considering any resulting prejudice to the defendant. CrR 4.4; *State v. Weddel*, 29 Wn. App. 461, 464, 629 P.2d 912 (1981). A trial court's refusal to sever is reviewed for manifest abuse of discretion. *State v. Kalakosky*, 121 Wn.2d 525, 537-39, 852 P.2d 1064 (1993).

Here, the trial court denied Bryant's pretrial motion to sever the offenses. Because he failed to renew the motion to sever before the close of trial, Bryant waived the issue of severance and cannot raise it on appeal. *State v. Henderson*, 48 Wn. App. 543, 551, 740 P.2d 329 (1987); *State v. Ben-Neth*, 34 Wn. App. 600, 606, 663 P.2d 156 (1983); CrR

---

[3]CrR 4.3 was amended effective September 1, 1995, several months after Bryant's trial; the amendment to section (a) substituted "charging document" for "charge." Because this change was not substantive, we have quoted the current version of the rule.

4.4(a)(2). Thus, only the issue of joinder was preserved for our review. Nonetheless, because both rules, joinder and severance, are based on the same underlying principle, that the defendant receive a fair trial untainted by undue prejudice, we do not believe that the "pure" legal issue of joinder can be decided in a vacuum without considering prejudice. In *Wilson*, the appellate court opined that "[our] Supreme Court has blurred the distinction between joinder and severance so carefully drawn in federal law by referring to [CrR 4.3] as a broad rule." *Wilson*, 71 Wn. App. at 886 (citing *State v. Thompson*, 88 Wn.2d 518, 525, 564 P.2d 315 (1977), *overruled on other grounds by State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992)). To the extent that the distinction between review of joinder and severance issues may have become blurred, we believe it is because the potential for prejudice must be considered in determining, in advance of trial, whether joinder is proper as a matter of law, and because actual prejudice must be considered in determining, at the appellate level, whether joinder was proper as a matter of law. Thus, even if joinder is legally permissible, the trial court should not join offenses if prosecution of all charges in a single trial would prejudice the defendant. *United States v. Peoples*, 748 F.2d 934, 936 (4th Cir. 1984), *cert. denied*, 471 U.S. 1067, 105 S. Ct. 2143, 85 L. Ed. 2d 500 (1985); 12 ROYCE A. FERGUSON, WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 1717, at 354 (2d. ed. 1997); *see State v. Culver*, 36 Wn. App. 524, 529, 675 P.2d 622 (1984) (considering whether actual prejudice occurred as a result of joinder even though no error was assigned to the denial of motion to sever); *Bayless v. United States*, 381 F.2d 67, 72 (9th Cir. 1967) (considering whether the trial court abused its discretion in not ordering separate trials on escape and burglary offenses due to prejudice despite defendant's failure to preserve the severance issue for appeal).

Thus, we will first determine whether the bail jumping and the substantive offense were based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Then, we will

consider actual prejudice to determine in the final instance whether joinder was proper as a matter of law.

A. Sufficiently Connected Offenses

■ Our court rule and the federal equivalent are written in the disjunctive: Joinder is appropriate where offenses "[a]re based on the same conduct, *or* on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a)(2); FED. R. CRIM. P. 8 (emphasis added).[4] In *United States v. Ritch*, 583 F.2d 1179 (1st Cir. 1978), the First Circuit, addressing a similar challenge to joinder of offenses, explained the scope of the joinder rule:

> The simple answer to [appellant's claim that joinder of bail jumping and cocaine charges was improper because those offenses are not of a similar character] is that the scope of [the rule] is broader. It also permits joinder where the offenses are "connected together."

*Ritch*, 583 F.2d at 1181 (construing FED. R. CRIM. P. 8, the federal equivalent to CrR 4.3(a)(2)). Although a challenge to the joinder of bail jumping with the underlying substantive offense is an issue of first impression in Washington, federal cases set forth a test to determine whether bail jumping and substantive underlying offenses are sufficiently connected for joinder:

> It is well established that a charge of bail jumping or escape may be deemed sufficiently "connected" with a substantive offense to permit a single trial, at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive charges.

*Ritch*, 583 F.2d at 1180-81 (construing FED. R. CRIM. P. 8).

---

[4]Rule 8 states, in relevant part:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both, are of the same or similar character or are based on the same act or transaction *or* on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

FED. R. CRIM. P. 8(a) (emphasis added).

Here, the acts giving rise to the charges of robbery and bail jumping occurred within a period of four months; thus, the acts are related in time. And in our view more importantly, the missed court appearance was an omnibus hearing that stemmed from the robbery charge. When a defendant is released on bail pending trial of a charged offense and jumps bail by failing to appear when required at a hearing related to the underlying charge, the acts giving rise to the two charges are likely to be related in time. Bryant's bail jumping did not involve flight for the purpose of avoiding prosecution, however. Although he failed to appear for the scheduled omnibus hearing, he appeared voluntarily before the omnibus court in the company of his attorney four days later, seeking and obtaining reinstatement of bail. Thus, only two of the three prongs of the federal test for a sufficient connection between the charges to justify joinder are satisfied here.

Although the three prongs of the federal test for appropriateness of joinder are couched in the conjunctive, we are not persuaded that slavish adherence to the federal test is appropriate in Washington, given Washington's strong policy in favor of conserving judicial and prosecution resources. We conclude that these charged offenses, which are related in time with one stemming directly from the other, are sufficiently "connected" to permit a single trial.

B. Prejudice

To determine whether joinder was proper as a matter of law, we next must consider whether Bryant was prejudiced by the joinder. Our Supreme Court has explained that "[p]rejudice may result from joinder . . . if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition." *State v. Russell*, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129, 115 S. Ct. 2004, 131 L. Ed. 2d 1005 (1995). In addition, the courts recognize several factors which may offset any prejudice from joinder:

> (1) the strength of the state's evidence on each count, (2) the clarity of defenses to each count, (3) the court properly

instructed the jury to consider the evidence of each crime, and (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

*State v. York*, 50 Wn. App. 446, 451, 749 P.2d 683 (1987) (quoting *State v. Smith*, 74 Wn.2d 744, 755-56, 446 P.2d 571 (1968), *vacated in part on other grounds*, 408 U.S. 934 (1972)).

Here, Bryant failed to demonstrate prejudice at the time he objected to joinder, and he fails to demonstrate prejudice on appeal. Although the jury found Bryant guilty of the lesser offense of third degree theft rather than second degree robbery, the record reflects that the State presented sufficient evidence from which a rational jury could have convicted Bryant of second degree robbery. That the jury convicted Bryant of a lesser offense than robbery does not require the conclusion that Bryant was prejudiced by the joinder. If anything, the jury's verdict demonstrates a lack of prejudice in that the jury clearly did not infer guilt of robbery in the second degree based on the evidence of bail jumping. The facts that the robbery charge was pending and that Bryant was required to appear for a hearing in connection with that offense would have been admissible at a separate trial of the bail jumping offense. There is no indication in the record that Bryant's defenses to each offense were unclear or that the jury instructions were inadequate. Because the federal "flight to avoid prosecution" prong is missing in this case, the cumulated evidence did not suggest an inference of guilt or a criminal disposition. Indeed, the missing third prong of the federal test worked to Bryant's advantage in this case by negating any possible inference of guilt as to either charge based on evidence of flight to avoid prosecution for the robbery. Moreover, the verdict demonstrates that the jury rejected any such inference of guilt in that Bryant was not convicted of robbery in the second degree as charged but rather of theft in the third degree.

We therefore conclude that Bryant received a fair trial untainted by undue prejudice arising from joinder. The

trial court's decision to allow joinder was correct as a matter of law.

## II. Sufficiency of the Evidence

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990). In addition, " '[w]hen the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.' " *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In analyzing the sufficiency of the evidence, this court will defer to the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences therefrom. *State v. Hayes*, 81 Wn. App. 425, 430, 914 P.2d 788, *review denied*, 130 Wn.2d 1013 (1996).

Bryant was charged with bail jumping, in violation of RCW 9A.76.170. That section provides: "(1) Any person having been released by court order or admitted to bail with the requirement of a subsequent personal appearance before any court of this state, and who knowingly fails to appear as required is guilty of bail jumping." RCW 9A.76.170(1). By statute, a person acts knowingly when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). Our Supreme Court has construed section (1)(b)(ii) of this statute as stating a permissive inference, not a mandatory presumption. *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980).

Bryant first challenges his bail jumping conviction by

arguing that the State failed to present sufficient evidence that he knowingly failed to appear. At trial, a superior court deputy clerk testified that Bryant was present in court on December 2, 1994, when the judge ordered him to appear on December 8, 1994. The deputy clerk also testified that Bryant signed an order that stated: "appear for Omnibus on 12/8, 1994." Report of Proceedings at 128. In addition, this document, containing Bryant's signature and the date of the hearing, was entered into evidence at trial as State's Exhibit 2. At trial, when Bryant's attorney asked him why he didn't show up at the omnibus hearing, Bryant responded: "The 8th, I was supposed to show. I didn't show up on the 8th because I got confused on my court dates[.]" Report of Proceedings at 165.

As the trial judge explained, outside the presence of the jury, bail jumping is not a per se offense. The State must prove beyond a reasonable doubt that Bryant knew, or was aware that he was required to appear at the hearing on December 8, 1994. The record demonstrates that on December 2, 1994, Bryant was aware that he was required to attend the December 8, 1994 hearing. But on December 8, 1994, Bryant contends that he forgot about the hearing based on confusion regarding his court dates. Bryant argues that because he was not aware, on December 8, 1994, that he was required to be in Snohomish County Superior Court, he did not knowingly fail to appear. Thus, we must determine whether a rational trier of fact could rationally have inferred the "knowingly" element of the bail jumping statute to be satisfied by Bryant's awareness of the hearing on December 2, 1994, despite his alleged unawareness on December 8, 1994. In analyzing this issue we observe that the State failed to present direct evidence rebutting Bryant's claim that he forgot about the hearing based on confusion regarding court dates but, despite Bryant's argument to the contrary, that Bryant's knowledge on December 2nd is not the only evidence presented on the issue of knowledge.

Specific criminal intent may be inferred from circumstan-

tial evidence or from a defendant's conduct, where the requisite intent is plainly indicated as a matter of logical probability. *State v. Billups*, 62 Wn. App. 122, 126, 813 P.2d 149 (1991). Moreover, circumstantial evidence is not to be considered any less reliable than direct evidence. *State v. Brown*, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993). Our Supreme Court explained in *Shipp* what level of circumstantial evidence is sufficient for a jury to conclude that a defendant had actual knowledge:

> The comparison to the ordinary person has been imported into many legal definitions to make it clear to the jury what level of circumstantial evidence is sufficient for it to conclude that the defendant had actual knowledge . . . [b]ut the comparison creates only an inference. The jury must still find subjective knowledge.

*Shipp*, 93 Wn.2d at 517 (citation omitted). Thus, if a reasonable person would have known of the hearing on December 8, 1994, then the evidence is sufficient for a jury to conclude that Bryant knew, i.e., had subjective knowledge, despite Bryant's testimony to the contrary. Therefore, a rational, fair-minded jury could conclude that Bryant had actual knowledge on December 8, 1994, based on the written and verbal notice he received only a few days earlier and on the additional fact that he had posted a $20,000 bond. Viewing the evidence in the light most favorable to the State, any rational trier of fact could conclude beyond a reasonable doubt that Bryant knowingly failed to appear at his December 8, 1994 hearing. Thus, the evidence is sufficient to support Bryant's conviction of bail jumping.

### III. Jury Instruction

Instructional errors affecting constitutional rights may be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Vanoli*, 86 Wn. App. 643, 646-47, 937 P.2d 1166 (1997). Although Bryant failed to object to the jury instructions at trial, he now contends that the instructions contain an error that violated his due process rights. Thus,

we will review this assignment of error de novo. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121, 116 S. Ct. 931, 133 L. Ed. 2d 858 (1996). The challenged jury instruction reads: "If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge." Clerk's Papers at 57. This instruction is identical to Washington Pattern Jury Instruction (WPI) for the criminal element of knowledge and follows the language of the statutory definition of knowledge as construed in *Shipp*. *See* WPIC 10.02; RCW 9A.08.010(1)(b)(ii); *Shipp*, 93 Wn.2d at 515-17. This instruction was specifically approved by our Supreme Court in *State v. Leech* and has since been upheld repeatedly by Washington courts as constitutional. *State v. Leech*, 114 Wn.2d 700, 710, 790 P.2d 160 (1990); *see, e.g.*, *State v. Johnson*, 61 Wn. App. 235, 240, 809 P.2d 764 (1991), *aff'd*, 119 Wn.2d 167, 829 P.2d 1082 (1992).

The instruction contains a permissive inference. *Shipp*, 93 Wn.2d at 515-17. Thus, it permits, but does not require, the jury to infer the element of knowledge from the evidentiary facts. "When an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow 'more likely than not' from proof of the basic fact." *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135, *cert. denied*, 513 U.S. 919, 115 S. Ct. 299, 130 L. Ed. 2d 212 (1994) (quoting *County Court v. Allen*, 442 U.S. 140, 165, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)). Yet, if the inference described in the instruction is the only basis, or an alternate basis, for finding an element of the crime charged, then the standard of proof is "reasonable doubt," rather than "more likely than not." *State v. Brunson*, 128 Wn.2d 98, 108-09, 905 P.2d 346 (1995) (citing *State v. Delmarter*, 68 Wn. App. 770, 784, 845 P.2d 1340 (1993)). Whether an inference meets the appropriate standard must be determined on a case-by-case

basis in light of the particular evidence presented to the jury in each case. *Hanna*, 123 Wn.2d at 712. In addition, our Supreme Court has explained that "[t]he jury is *permitted* to find actual subjective knowledge if there is sufficient information which would lead a reasonable person to believe that a fact exists." *State v. Johnson*, 119 Wn.2d 167, 174, 829 P.2d 1082 (1992).

Bryant contends that the knowledge instruction violated his due process rights because it allowed the jury to use an inference as the sole source of evidence of an essential element of the crime and because the inferred fact does not flow from the proven fact beyond a reasonable doubt. Bryant maintains that here the only proven fact is that he had notice on December 2 that he was to appear in court on December 8. He argues that the fact of notice on December 2 does not prove subjective knowledge on December 8 beyond a reasonable doubt. But the record reflects that notice on December 2 was not the sole evidence of knowledge on December 8. The large bond is another proven fact that makes it more likely than not that a reasonable person would have known, on December 8, that he was required to appear, in order to avoid substantial financial loss. Thus, "more likely than not" is the appropriate standard of proof. From the record in this case, we conclude that the inferred fact, that Bryant knowingly failed to appear, is more likely than not to flow from these proven facts, thereby providing Bryant with due process of law.

## IV. Prosecutorial Misconduct

 To establish prosecutorial misconduct, the defendant has the burden of establishing the impropriety of the conduct as well as its prejudicial effect. *State v. Gentry*, 125 Wn.2d 570, 640, 888 P.2d 1105, *cert. denied*, 516 U.S. 843, 116 S. Ct. 131, 133 L. Ed. 2d 79 (1995) (quoting *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991)). We review allegedly improper comments in the context of the entire argument, the issues in the case, the evidence addressed in the argument and the instructions given. *Rus-*

*sell*, 125 Wn.2d 85-86. Reversal is required only if " 'there is a substantial likelihood that the alleged prosecutorial misconduct affected the verdict.' " *State v. Luvene*, 127 Wn.2d 690, 701, 903 P.2d 960 (1995) (quoting *State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991)). The failure to object to a prosecutor's improper remark constitutes a waiver of the error " 'unless the remark is deemed to be so flagrant and ill intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.' " *Gentry*, 125 Wn.2d at 640 (quoting *Hoffman*, 116 Wn.2d at 93).

██ Here, the prosecutor said, "I forgot is not a defense to this charge, ladies and gentlemen" during closing argument. Report of Proceedings at 223. Bryant did not object. Bryant nevertheless contends on appeal that the word "forgot" means "without knowledge" and that it is a defense because it negates the "knowingly failed to appear" element of the offense of bail jumping. On this basis, he alleges that the prosecutor misled the jury and thus committed misconduct. The State takes the position that the prosecutor did not misstate the law. It argues that the use of the word "forgot" did not negate the "knowingly" requirement because the prosecutor's intended meaning was in accord with the second dictionary definition: "to fail to do (what one intended) because of carelessness or thoughtlessness; to overlook, omit or neglect unintentionally," rather than the first definition: "to lose the remembrance of; to let go from the memory; to fail to recall; [or] to be unable to remember." Resp. Br. at 39-40 (quoting WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 719 (2d ed. 1978)).

Despite the State's contention, both dictionary definitions of forgot essentially negate knowledge in its subjective sense, which is what the State had to prove. So technically, to argue that "I forgot is not a defense" to the crime is incorrect. Yet, immediately after saying, "I forgot is not a defense," the prosecutor correctly defined "knowingly" to mean "you are aware of something." Report of Proceedings at 223-24. Then she created a perfectly appropriate

analogy by reminding the jurors that the judge had told them to be back in court at a certain hour, something each of them was unlikely to forget. Viewed in this context, the prosecutor was referring back to the instruction: if a reasonable person would have known, then the jury could find that Bryant knew, too. Essentially, the prosecutor was arguing that a reasonable person would not have forgotten something so important as being in court on a certain day, and that saying "I forgot" does not necessarily relieve one of criminal liability if a reasonable person would, indeed, have known, i.e., would, indeed, not have "forgotten." We find no misconduct and, read in the full context of the argument, no misstatement of the law.

Moreover, the prosecutor's remarks were not flagrant and there is no evidence that they were ill intentioned. By failing to object, Bryant deprived the trial court of an opportunity to correct this alleged error, contrary to the policy of judicial efficiency. Given the full context of the prosecutor's argument, Bryant has also failed to meet his burden of demonstrating a prejudicial effect and a substantial likelihood that the alleged misconduct affected the verdict. Reversal is not required.

Accordingly, we affirm Bryant's conviction of bail jumping.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

WEBSTER and Cox, JJ., concur.