IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78098-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOSHUA CHARLES UTECHT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 29, 2019 |

SMITH, J. — Joshua Utecht appeals his conviction for possession of a stolen vehicle. He argues that the trial court's instruction on knowledge allowed the jury to convict if he "should have known" the vehicle was stolen and that the prosecutor committed reversible misconduct during closing argument by arguing the same. He also argues that the trial court erred by imposing a $100 DNA (deoxyribonucleic acid) collection fee. The knowledge instruction correctly stated the law because it required the jury to find actual knowledge. Furthermore, Utecht waived any claim of prosecutorial misconduct because he did not object to the prosecutor's misstatements and any prejudice could have been cured by an instruction to the jury. Therefore, we affirm his conviction, but we remand to the trial court to strike the DNA collection fee from his judgment and sentence.

FACTS

On April 6, 2016, Seattle police arrested Utecht after he crashed a stolen car into another vehicle and a garage. The car's stereo and climate-controlled

unit were torn out of the dashboard and a single key was stuck in the ignition. The key did not bear a manufacturer's stamp and had vertical shave marks indicating it might be a "shaved key," a type of key commonly used on stolen vehicles. The car was messy and contained a filing tool, a flashlight, a mini-tool, needle-nose pliers, and multiple stolen items. The State charged Utecht with possession of a stolen vehicle and other crimes not relevant on appeal.

At trial, Utecht testified that the car belonged to a friend and he was borrowing it for the week. The friend had a business buying vehicles that were in disrepair and fixing them up. Utecht had agreed to detail the car and perform a complete tune-up in exchange for being able to use it. Utecht saw a bill of sale for the car but not the title. But Utecht's friend had given Utecht a notarized letter stating that Utecht had permission to borrow the car. Utecht testified he did not know the car was stolen.

A jury convicted Utecht of possession of a stolen vehicle. The trial court sentenced him to 22 months' confinement and imposed a $100 DNA collection fee. Utecht appeals.

## JURY INSTRUCTION ON KNOWLEDGE

Utecht argues that the trial court's instruction on knowledge relieved the State of its burden to prove actual knowledge. We disagree.

The crime of possessing a stolen vehicle requires proof that the defendant knew the car was stolen. State v. Lakotiy, 151 Wn. App. 699, 714, 214 P.3d 181 (2009). While the jury may find that the defendant had actual knowledge based on circumstantial evidence, the jury cannot find knowledge because an "'ordinary

person in the defendant's situation would have known' the fact in question" or because the defendant "'should have known.'" State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015) (quoting State v. Shipp, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980)). Due process requires the State to prove all elements of the crime beyond a reasonable doubt. State v. W.R., 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

"Instructional errors affecting constitutional rights may be raised for the first time on appeal." State v. Bryant, 89 Wn. App. 857, 871, 950 P.2d 1004 (1998) (citing RAP 2.5(a)(3)). We review de novo whether an instruction was constitutional. Bryant, 89 Wn. App. at 871-72.

Here, the trial court gave the following instruction on knowledge:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

This instruction was proposed by the State and is identical to 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 10.02 (4h ed. 2016) (WPIC)[1] and defense counsel's proposed instruction on knowledge.

---

[1] WPIC 10.02 states:
> A person knows or acts knowingly or with knowledge with respect to a [fact] [circumstance] [or] [result] when he or she is aware of that [fact] [circumstance] [or] [result]. [It is not necessary that the person know that the [fact] [circumstance] [or] [result] is defined by law as being unlawful or an element of a crime.]

WPIC 10.02 does not misstate the law. In State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), our Supreme Court expressly approved of WPIC 10.02 to instruct the jury on the meaning of "knowledge." See also Allen, 182 Wn.2d at 372 (instruction given reflected the language of WPIC 10.02 and "correctly stated the law regarding 'knowledge'"). Therefore, the trial court's knowledge instruction did not relieve the State of its burden to prove actual knowledge.

Utecht argues that WPIC 10.02 improperly permits conviction without requiring the State to prove actual knowledge because it does not clearly state that without actual knowledge, acquittal is required. But WPIC 10.02 does require the jury to find actual knowledge by explaining that a person "acts knowingly . . . when he or she is aware of that [fact]." Furthermore, in Allen, the Supreme Court explained that "[t]o pass constitutional muster, the jury must find actual knowledge but may make such a finding with circumstantial evidence." Allen, 182 Wn.2d at 374. WPIC 10.02 allows for such a circumstance because it enables the jury to find actual knowledge based on the circumstantial evidence of what a reasonable person in the same situation would believe. Contrary to Utecht's argument, more specificity is not required.

---

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

[When acting knowingly [as to a particular fact] is required to establish an element of a crime, the element is also established if a person acts intentionally [as to that fact].]

Because the jury instruction given was a correct statement of the law, we do not reach Utecht's prejudice arguments or his argument that defense counsel was ineffective for proposing a knowledge instruction identical to WPIC 10.02.

## PROSECUTORIAL MISCONDUCT

Utecht argues that the prosecutor committed reversible misconduct by misstating the State's burden of proof on knowledge. We disagree.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). "A prosecuting attorney commits misconduct by misstating the law." Allen, 182 Wn.2d at 373. But "[i]f the defendant did not object, he is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Whitaker, 6 Wn. App. 2d 1, 15-16, 429 P.3d 512 (2018), review granted, 193 Wn.2d 1012 (2019). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" State v. Emery, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting Thorgerson, 172 Wn.2d at 455).

Here, Utecht claims that several arguments by the prosecutor improperly stated that "what Utecht 'should have known' or what a reasonable person 'would

have known' could substitute for Utecht's actual, subjective knowledge." First,

Utecht takes issue with the following argument by the prosecutor:

> So then the big question is knowledge, and "knowledge" is defined for you in your instructions. It will say "a person knows or acts knowingly or with knowledge with respect to a fact, circumstances or result, not necessarily that the person knew or could know that the fact, circumstance or result is defined by law as being unlawful.
>
> So what does that mean? That means that if Mr. Utecht knew that the car was stolen by [his friend] -- and we don't know that, but if he thought that and he thought, '[my friend] will write me this note, so that means I will have permission,' that doesn't matter. That has no impact here. The law defines it as the person knows the car is stolen, so it doesn't matter if someone else gave him permission to be the lawful owner.
>
> So next, in considering knowledge, you can consider that "if a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted, but not required, to find that he or she acted with knowledge of that fact."
>
> So this, again, comes back to that common sense. Would a reasonable person in the same situation have reason to believe that this car was stolen? And ladies and gentlemen, I submit to you "yes."
>
> And let's talk about this car. Let's talk about what Mr. Utecht knew. Utecht knew the state of that car. He talked about it. It was a mess. The car was a mess. But it wasn't just a mess; the car was not just a mess.

The prosecutor again addressed what a reasonable person would have known:

> Would a person in a car full of stolen property, with the location of those burglary tools and the state of the[ ] car would a person in that same position know, would it be reasonable to know that the car was stolen? I submit to you that it would be reasonable.

This argument was not improper. It correctly stated the trial court's

instruction on knowledge and explained that under the facts presented, a

reasonable person in Utecht's situation would believe the car was stolen. The

prosecutor did not improperly extend that logic and argue that Utecht "should

have known" that the car was stolen based on what a reasonable person would have known. In fact, the prosecutor later asserted that Utecht did have actual knowledge given the state of the car.

Utecht argues, and the State concedes, that the prosecutor did misstate the definition of knowledge when she stated:

> the really important thing to note here, or one of the main things, is that the State doesn't have to prove to you that someone told Mr. Utecht that the vehicle was stolen. If you find that a reasonable person in the same position would have known *or* that Mr. Utecht knew, from the circumstantial evidence before you or from the direct evidence before you, then that element will be satisfied beyond a reasonable doubt.

(Emphasis added.) We agree that this is a misstatement of the law because use of the word "or" allows the jury to convict only based on what a reasonable person would have known, not what Utecht actually knew.

Utecht also argues the prosecutor improperly argued that he "should have known" that the car was stolen when she stated:

> I think what's important here, with regards to the possession of stolen property in the second degree and possession of a stolen motor vehicle, is there are a lot of little details. Maybe alone a key that's stuck in a car might not mean anything; maybe alone just this one check might not mean something; maybe alone the dangled wires might not mean anything. But put it all together and there's overwhelming evidence that *a reasonable person would have known and should have known that that vehicle was stolen*; that the items in the vehicle were stolen and that Mr. Utecht had access to the back of that car. He had access to those items in the back of the car. He manipulated those items when he moved some of the bags and left others in the car.
> And is it really reasonable to believe that he didn't know that the items were in that car, when he had intended to use it for moving tools? That he left all of that stuff in there? I submit to you that it's not. I submit to you that the totality of the circumstances, all of those facts together show to you beyond a reasonable doubt that Mr. Utecht it [sic] guilty of possessing a stolen motor vehicle.

7

He knew that car was stolen.

(Emphasis added.) Even though the prosecutor eventually concluded that Utecht had actual knowledge, we agree that her argument was improper because she argued that a reasonable person "should have known" the car was stolen based on the evidence. The law allows the jury to consider what a reasonable person in the same situation would believe, not what he or she "should have known." Allen, 182 Wn.2d at 374.

Given the complicated nature of the legal concept of knowledge, we expect prosecutors to carefully and articulately explain this concept to jurors. The prosecutor's statements were careless, inaccurate, and inappropriate. Even so, these misstatements are not reversible misconduct. The improper statements could readily have been cured by an instruction to the jury reminding it that a finding of actual knowledge is required for culpability. But no such instruction was requested. Therefore, Utecht has not demonstrated that the prosecutor's statements were prejudicial. Cf. State v. Blizzard, 195 Wn. App. 717, 733, 381 P.3d 1241 (2016) ("A defendant who waits until appeal to raise misconduct arguments bears a heavy burden."), review denied, 187 Wn.2d 1012 (2017).

Utecht argues that Allen is analogous and requires reversal because the prosecutor repeatedly misstated the instruction on knowledge. But here there were just two misstatements, whereas in Allen, the court recounted "numerous instances" where the prosecutor misstated the knowledge standard, including: (1) at least five times during closing, (2) in a slide show that repeatedly included a

"should have known" standard, and (3) during rebuttal, where "the prosecuting attorney continued to misstate the knowledge standard" and displayed "a slide show that contained four slides titled 'Defendant Should Have Known.'" Allen, 182 Wn.2d at 376-77. Therefore, Allen is distinguishable.

Utecht argues that the prosecutor's misstatement was flagrant and ill intentioned because case law clearly prohibits the statement. He cites both In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 286 P.3d 673 (2012) (plurality opinion), and State v. Fleming, 83 Wn. App. 209, 921 P.2d 1076 (1996), for this proposition. But Glasmann does not state that conduct is flagrant and ill intentioned simply because there is case law prohibiting it. Glasmann, 175 Wn.2d at 707. There, the prosecutor's expression of his personal opinion of Glasmann's guilt was flagrant and ill intentioned because it "permeated" his closing argument. Glasmann, 175 Wn.2d at 707. And the misstatement of the law that occurred in Fleming "misstated the law and misrepresented both the role of the jury and the burden of proof." Fleming, 83 Wn. App. at 213. Due to the nature of the statement in that case, the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict and was therefore flagrant and ill intentioned.

Here, unlike in Glasmann or Fleming, the prosecutor's misstatements of what was required to prove knowledge could easily have been cured by an instruction. They did not permeate the argument and did not have a substantial likelihood of affecting the jury verdict, especially given the fact that the prosecutor

9

did argue that Utecht had actual knowledge the car was stolen. Therefore, reversal is not warranted.

## LEGAL FINANCIAL OBLIGATIONS (LFOs)

Utecht challenges the imposition of the $100 DNA collection fee as part of his LFOs. RCW 43.43.7541 states that criminal offenders must pay a $100 DNA collection fee "unless the state has previously collected the offender's DNA as a result of a prior conviction." This statute, amended effective June 7, 2018, applies prospectively to cases on direct appeal when the amendment was enacted. State v. Ramirez, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). Utecht's judgment and sentence was filed on February 23, 2018, and is still on direct appeal.

The State concedes that Utecht's DNA was collected after prior convictions and that remand is necessary. The case is therefore remanded to strike the $100 DNA collection fee from Utecht's LFOs.

We affirm Utecht's convictions but remand for the trial court to strike the $100 DNA collection fee from his judgment and sentence.

WE CONCUR:

10